**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Yiwu Baimei Electronic Commerce Co., Ltd.,<br><br>Plaintiff,<br>v.<br><br>The Partnerships And Unincorporated Associations Identified On Schedule A,<br><br>Defendants. | Case No. 24-cv-12074 |

MEMORANDUM OF SHENZHEN CAICHI APPAREL CO., LTD IN OPPOSITION TO THE ENTRY OF A PRELIMINARY INJUNCTION AND CROSS MOTION TO DISMISS

## I. Introduction

Defendant, Shenzhen Caichi Apparel Co., Ltd., operates of a number of online retail stores. Among its stores are stores that are named as defendants in this suit, a list of which is set forth in the Declaration of Tao Shubiao, ¶ 6, attached as Exhibit A hereto (collectively "Caichi Apparel"). The Complaint filed by Plaintiff, Yiwu Baimei Electronic Commerce Co., Ltd ("Plaintiff") accuses Caichi Apparel of infringement of 8 copyright registrations, but fails to include any images of the purportedly copyrighted material. It also fails to include any images of any of Caichi Apparel's products accused of infringing.

Plaintiff's Complaint fails to identify any sales of any accused product of Caichi Apparel in this district. And for good reason. Caichi Apparel has never sold any accused product in Illinois. Furthermore, not only was Plaintiff's complaint devoid of any evidence showing what the copyrights at issue actually cover, so too was Plaintiff's TRO lacking in any images corresponding to the copyright registrations at issue. Dkt. 15; Dkt. 9; Dkt. 10. Yet without the ability to compare the purportedly copyrighted images to any accused product, this Court appears to have granted Plaintiff's request for TRO, though no entry reflecting the grant of Dkt. 15 appears on this Court's Docket. Exhibit B. Still, this Court entered an extension of the TRO in a Minute Order on December 11, 2024. Dkt. 20.

Plaintiff never provided a sufficient basis for this Court's jurisdiction over Caichi Apparel. Plaintiff has never provided sufficient factual information for this Court to perform a proper assessment of Plaintiff's claims to determine whether it has a likelihood of success on the merits. Indeed, it is impossible for this Court to have done so without reviewing the deposit materials associated with each copyright at issue, and those deposit material appear nowhere in the record.[1]

[1] Defendants still have not received file stamped copies of Sealed Docket Entries 4, 8, and 10.

Overall, Plaintiff's short-shrift motion for TRO and subsequent motion for Preliminary Injunction (which merely relies on the Court's granting the TRO) fail to meet the appropriate standard for permitting such extraordinary relief. Plaintiff's Preliminary Injunction must be denied.

## II. The Background Facts[2]

Plaintiff filed a complaint for copyright infringement in November of 2024. However, it did not serve the complaint until December 23, 2024. As Caichi Apparel resides in China, the Complaint was not received until December 24, 2024. By that time, Defendant had mere hours to process the incoming documents, find counsel in the United States who would be able to review the case, complete conflicts checks, secure an engagement and notify the Court by the day after Christmas that they opposed the entry of a preliminary injunction.

Unfortunately, Caichi Apparel was unable to accomplish the forgoing on such an extraordinarily tight time frame. It was not until January 7 that Caichi Apparel was finally able to secure the undersigned US counsel to assist it in this matter.

As it turns out, the complaint against Caichi Apparel is faulty from the start. Plaintiff's complaint is defective and the way in which Plaintiff hides information and equivocates on basic jurisdictional requirements indicates that Plaintiff is aware of the defects. For example, rather that affirmatively stating that Caichi Apparel (or any of its named defendant stores for that matter) actually sold any accused product in this district, the Complaint states defendants directed "some portion" of activity toward Illinois "through the advertisement, offer to sell, sale, and**/or** shipment of goods…." Dkt. 1, ¶3, emphasis added. Plaintiff could not state that Caichi Apparel sold any accused products in this district because it has not.

---

[2] These facts are further supported by the Declaration of Tao Shubiao, paragraphs 4-14, filed concurrently herewith.

The Complaint references 8 different copyrights. Dkt. 1, opening paragraph. Each copyright is identified with the prefix "VA" and therefore each is a work of visual art. See, https://www.copyright.gov/forms/formva.pdf. Plaintiff did not provide any images corresponding to the supposed works of visual art in the Complaint. Such images are generally referred to as the "deposit material", and they constitute the subject matter that is subject to the copyright registrations. Without access to the deposit material, there is no possible way to assess the scope of the copyrights at issue.

So too, Plaintiff did not provide any deposit material along with any other filing in this case thus far. There are no deposit material attached to the motion for TRO, and there are no deposit material attached to the motion for preliminary injunction either. Dkt. 15; Dkt. 22.

Nevertheless, this Court appears to have granted the TRO (though no docket entry refers to the grant of Dkt. 15), and later extended the TRO. See Dkt. 20. The Court then allowed the TRO to be temporarily converted to a preliminary injunction on December 20, 2024 and gave Defendants only six days (a timeframe that eclipsed the Christmas holiday) to notify the Court whether they opposed the entry. Dkt. 23. In fact, that time frame was made even shorter because Plaintiff did not even purport to serve Defendants until December 23, 2024. Dkt. 25-28.

Defendant Caichi Apparel operates many online retail storefronts across numerous different platforms and is a successful and legitimate business. Upon receiving Plaintiff's complaint, Caichi Apparel undertook an investigation into the allegations. Defendant determined that it never sold any of the accused products in Illinois. Exhibit A, ¶ 9-13. In fact, Defendant only ever sold 2 products for a total of $23.94, and those sales were in Arizona and Ohio. Those two products were ASIN B0D9N5G5GY, and consisted of molds of generic Halloween themed imagery:




### III. This Court Lacks Jurisdiction Over Defendants

To obtain a preliminary injunction, a Plaintiff must make a clear showing that "(1) the threat of irreparable harm for which there is no adequate remedy at law; (2) that the threatened injury to plaintiff outweighs the harm an injunction might inflict on the defendant; (3) that the plaintiff has a reasonable likelihood of success on the merits; and (4) that the issuance of a preliminary injunction would not disserve the public interest." *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 321-22 (7th Cir. 1984). Indeed, where a plaintiff fails to "satisfy[y] their burden to make a 'clear showing' sufficient to justify the 'extraordinary remedy' of a preliminary injunction," the plaintiff's motion for preliminary injunction should be denied. *Novak v. Pearlstein*, No. 13-CV-08861, 2016 WL 11948359, at *3 (N.D. Ill. May 17, 2016) quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). And, "if a plaintiff fails to meet any of the threshold requirements for a preliminary injunction including likelihood of success on the merits, the court *must deny* the injunction." *Martinez v. City of Chicago*, 534 F. Supp. 3d 936, 955 (N.D. Ill. 2021) (emphasis original, cleaned up).

Aside from the basic preliminary injunction factors, the entry of a preliminary injunction must comport with due process, and be given adequate notice and opportunity to respond and be

heard. See Fed. R. Civ. P. 65(a)(1). The Supreme Court provided guidance on due process long ago:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance.... But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 433 (1974).

Relatedly, "[f]or a TRO or preliminary injunction order to be valid, the issuing Court must have personal jurisdiction over the defendants." *Am. Bridal & Prom Indus. Ass'n, Inc. v. The Partnerships & Unincorporated Associations Identified on Schedule A*, 192 F. Supp. 3d 924, 930 (N.D. Ill. 2016). "Neither the Lanham Act nor the Copyright Act authorizes nationwide service of process." *Id*. at 930-931. As a result, this Court, sitting in Illinois, "may exercise jurisdiction over Defendants only if authorized both by the United States Constitution and, as applicable, Illinois law." *Id*.

To establish general jurisdiction, the defendant's affiliations with Illinois must be so constant and pervasive as to render it essentially at home here. *Id*. To establish specific personal jurisdiction over a foreign defendant, Plaintiff must establish case-specific facts that the defendant has purposefully directed its activities at residents of Illinois and that plaintiff's claim is linked to the defendant's activities or contacts with Illinois. *Id*.

### A. This Court Does Not Have Jurisdiction Over Defendant Caichi Apparel

Plaintiff's complaint is woefully inadequate with respect to any allegations that could support jurisdiction. First, Plaintiff does not clarify whether it is asserting general jurisdiction or specific jurisdiction. In the most broad and generic recitation, the complaint avers that all defendants somehow purposefully directed "activities" toward this district and "conduct business" in this district merely by operating internet based e-commerce stores. Dkt. 1, ¶2. In a similarly generic accusation, Plaintiff states that Defendant somehow "purposefully" directed "some portion" of their "illegal activities" toward customers in Illinois through "the advertisement, offer to sell, sale, and/**or** shipment of goods" that supposedly infringe. Dkt. 1, ¶3, emphasis added. By intentionally interjecting the alternative conjunction "or" Plaintiff all but admits that it has no idea whether Defendants actually sold or shipped any product to Illinois. The rest of Plaintiff's complaint is conspicuously silent on any activities occurring within Illinois.

What this Court is left with is the exact same situation facing Judge Blakey in *Am. Bridal & Prom*. 192 F.Supp.3d at 930. There, a Plaintiff attempted to sue a number of foreign defendants based on those defendants merely having an internet presence, but the Court confirmed that maintenance of a website, even an interactive website, without more is not sufficient. Specifically, the Court stated:

> "Although Plaintiffs initially alleged that '[e]ach Defendant targets the United States, including Illinois,' amended complaint [18], ¶11, they could offer no facts to properly support that allegation, relying exclusively on the mere existence of the interactive websites. Plaintiffs have not shown that the websites were any more accessible in Illinois than anywhere else in the world; they have not shown that any Illinois residents actually accessed the websites; they have not shown any injury occurring in Illinois; they have not shown that any Defendant took any action with respect to Illinois in particular. They have not alleged or shown that any of the Defendants specifically agreed to ship to Illinois or that they otherwise reached out to, or expressly aimed their activities at, this state or its residents. Quite

> simply, Plaintiffs failed to show that *any* Defendant had any voluntary contacts with the State of Illinois, yet they seek to drag all 3000-plus Defendants into this district here solely because of their websites—precisely what *Hemi* admonished courts to avoid.

192 F. Supp. 3d at 934 citing *State of Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir.2010). Judge Blakey could have been quoting from Plaintiff's complaint. Indeed, in conclusory fashion, the complaint states "[e]ach Defendant targets the United States, including Illinois, and has solicited, marketed, promoted, and advertised their products in a manner that violates Plaintiff's rights." Dkt. 1, ¶24.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The requirement to accept an allegation in a complaint as true is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id.* at 678 (citations and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-679.

Plaintiff's allegations are the exact type of threadbare conclusions rejected by the Supreme Court. Aside from Paragraph 24 of the complaint, the only other paragraphs that make

reference to actual conduct of Defendants[3] is 33 where Plaintiffs state, "On information and belief, Defendants, without any authorization or license from Plaintiff, knowingly and willfully used and continue to use the Hollow Halloween Works in connection with the advertisement, distribution, offering for sale, and sale of products depicting Plaintiff's registered images over the internet in the United States and Illinois" and 43, which states "Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use Plaintiff's Hollow Halloween Works in products depicted in the advertisements, displays, distribution and offers for sale on their internet stores. Each of the Defendants' online stores offers shipping to the United States, including Illinois and each Defendant has offered to sell retail items into Illinois and this District utilizing unauthorized and infringing images of Plaintiff's Hollow Halloween Works." Dkt. 1. Once again though, both allegations are only superficial, non-substantive, conclusions that are "merely consistent" with liability, but that does not support jurisdiction. Moreover, Paragraph 43 again fails to allege any actual sales activity, and instead avers that each store "offers shipping" to the entire United States, including Illinois.

The Declaration of Jun Wu in support of the preliminary injunction is no better. Dkt. 9. It is replete with conclusory allegations of the same type rejected by the Court in *Am. Brial*.[4] The declaration only makes reference to broad alleged conduct occurring in the United States "including Illinois" and generic accusations of material being "offered for sale." See, for example, Dkt. 9, ¶¶15-18. Interestingly, Jun Wu's declaration was executed in Yiwu, Zhejian Province,

---

[3] None of the allegations are specific to Caichi Apparel or any of its stores. Instead, Plaintiff lumps all defendants together.

[4] Another analogous case rejecting jurisdiction is *Rubik's Brand, Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 20-CV-5338, 2021 WL 825668, at *4 (N.D. Ill. Mar. 4, 2021) where the court found the defendant had made no sales in Illinois, and plaintiff's argument for jurisdiction was, in the court's words "at most—the possibility that a sale could be made in Illinois."

China, which begs the questions as to where the purported research took place and how such research could be connected to any alleged customers in Illinois.

Overall, the complaint fails to set forth sufficient facts to establish specific jurisdiction in Illinois. While Defendant casually mentions Federal Rule of Civil Procedure 4(k), that is not sufficient to establish jurisdiction here. As discussed above, Defendant only ever sold two of the accused products, and those sales occurred in Arizona and Ohio, making those states the only proper jurisdiction—if any—that exists. Accordingly, this Court must dismiss Caichi Apparel, including all 35 of its stores under Federal Rule of Civil Procedure 12(b)(6) for lack of jurisdiction and failure to meet the Due Process standard.

## IV. This Court Must Deny Plaintiff's Motion for Preliminary Injunction

### A. This Court Does Not Have Jurisdiction Over Caichi Apparel

"[T]he court is powerless to issue an injunction binding [defendant] if it does not have personal jurisdiction over him." *Savis, Inc. v. Cardenas*, 2018 WL 5279311 at *4 (N.D. Ill. Oct. 24, 2018). As discussed above, this Court lacks jurisdiction over Caichi Apparel. Therefore it cannot enter a preliminary injunction over Caichi Apparel and its stores.

### B. There Is No Irreparable Harm

"[Injunctive] relief is not easily achieved under copyright law." *Garcia v. Google, Inc.*, 786 F.3d 733, 745 (9th Cir. 2015); *See Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 953 (N.D. Ill. 2018) citing *Garcia*. The primary purpose of copyright law is not necessarily to protect the interests of the author, but rather to promote the progress of the useful arts and science. Plaintiff's argument that it will suffer irreparable harm in the absence of an injunction is rooted in its own monetary interest. It complains that Defendant's might "disgorge their assets prior to Plaintiff obtaining equitable relief." Dkt. 15, p. 8. But monetary loss is not irreparable. In fact, damages are available specifically to compensate for such loss (if it exists).

Plaintiff conflates an alleged difficulty in recovering money, with irreparable harm that cannot be compensated by money.

Plaintiff attempts to support its motion for preliminary injunction with a declaration of Jun Wu that reads as if Plaintiff had trademark rights—not the asserted copyright rights. Wu goes on and on about "good will," images "signifying to the purchaser that the products come from and/or are approved by Plaintiff," complaining that its "reputation" will be damaged, and the loss of quality control. See, Dkt. 9, ¶¶12-13, 27-29. At one point Plaintiff even complains about "loss in **brand** confidence." Dkt. 9, ¶28, emphasis added. None of that is relevant to the only asserted claim of copyright infringement.

When there is no showing of irreparable harm, the court should deny a preliminary injunction on that ground alone. *Praefke Auto Elec. & Battery Co. v. Tecumseh Prod. Co*., 255 F.3d 460, 461 (7th Cir. 2001) ("There is therefore no showing of irreparable harm, and on this ground alone the preliminary injunction should have been denied.").

Plaintiff cannot rely on the mere existence of copyright registrations to presume that in absence of the preliminary injunction, it would suffer irreparable harm. The U.S. Supreme Court's 2006 decision in *eBay, Inc. v. MercExchange, LLC*, reversed the legal landscape regarding the presumption of irreparable harm in intellectual property cases. 547 US 388, 392-393 (2006). Since then, courts in nearly every circuit have held that a prima facie case for copyright infringement, alone, **does not** create a presumption of irreparable injury as it once did. *See. X-Ray, Inc. v. Spears*, 929 F. Supp. 2d 867, 871 (W.D. Ark. 2013) ("Following the decision in *eBay*, federal courts of appeals throughout the country recognized that there was no justification for holding intellectual property disputes to a different standard than all other disputes when evaluating motions for preliminary injunctions. They acknowledged that it was no

longer good law to presume irreparable harm upon a showing of likelihood of success on the merits in a patent, trademark, or copyright infringement case."); *see, e.g., Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 31 (1st Cir.2011); *Salinger v. Colting*, 607 F.3d 68, 74–75 (2d Cir.2010); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir.2007); *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir.2008); *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995–96 (9th Cir.2011).) *See also TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019), *MPAY Inc. v. Erie Custom Computer Applications, Inc.*, 970 F.3d 1010. 1019 (8th Cir. 2020).

Plaintiff cites to old, pre-*eBay* case law when it argues about harm to Plaintiff. *See* Dkt 24, page 7. As made clear in *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012), the position of this circuit mirrors the majority view and follows the holding of *eBay*. Indeed, in *Flava Works*, the Seventh Circuit held that the district judge erred by relying on a pre-*eBay* holding that irreparable injury could be presumed because *eBay* "made clear that there is no such presumption." *Id*. Therefore, Plaintiff must show that it will likely suffer irreparable harm in the absence of an injunction, regardless of whether it has a registered copyright. *See Mich. v. U.S. Army Corps of Eng'rs*, 2010 WL 5018559 at *24 (N.D. Ill. Dec. 2, 2010) (Rather, Plaintiff's "evidence must demonstrate that [it] ha[s] carried [its] burden 'that irreparable injury is likely' - not just possible - 'in the absence of an injunction.'").

Plaintiff's purported harm to goodwill and reputation are not copyright injuries. Copyright protects only the original artistic expression of a work. 17 U.S.C. § 102. By contrast, a trademark protects against false designation of origin. 15 U.S.C. § 1125; *Vidal v. Elster*, 602 U.S. 286, 300 (2024), cleaned up ("A basic function of trademark law has always been to prohibit confusion as

to the source of good or services.”). The Seventh Circuit has specifically warned against the type of mutant argument advanced by Plaintiff stating:

> “Trademark law was meant to protect a different set of interests and, in contrast to copyright, does not impose a sunset date on the rights it protects. Extending the ‘origin of goods’ to include the producer of creative content conveyed by a book, video, or other physical good, so that a false representation of the origin of the creative content supports a claim of trademark infringement, would result in a species of mutant copyright law that limits the public's federal right to copy and use expired copyrights.”

*Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 827 (7th Cir. 2016). Moreover, there is no remedy in copyright law for any purported damage to “good will.” That is exclusive to trademark law. Rather, copyright remedies are for actual damages or statutory damages (if available). 17 U.S.C. § 504.

Irreparable harm also cannot be established solely on the fact of past infringement. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1215 (C.D. Cal. 2007). Plaintiff cannot make a showing of irreparable harm simply based on the notion that Defendant *may* continue to sell the products in question in the future. This circuit has noted that conclusory or speculative contentions are insufficient to demonstrate irreparable harm. *E. St. Louis Laborers' Loc. 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704-06 (7th Cir. 2005) (stating that “speculative injuries do not justify” granting injunctive relief and a party cannot obtain injunctive relief “by speculating about hypothetical future injuries.”); *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp. 2d 740, 748-49 (N.D. Ill. 2010) (finding “conclusory affidavits based on speculation…insufficient to justify injunctive relief prior to a trial on the merits.”). The possibility of continued infringement cannot constitute irreparable harm because such infringement can be compensated with an award of damages.

**C. Plaintiff is Unlikely to Succeed on the Merits**

As noted above, copyright only extends to **original** works of authorship. Indeed, "[t]he *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Additionally, "[i]n all infringement cases, the plaintiff must prove, as a factual matter, that the defendant *actually copied* his work. *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 887 (7th Cir. 2021). "Proof of copying by the defendant is necessary because independent creation is a complete defense to copyright infringement." *Id.* quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). For "[n]o matter how similar the plaintiff's and the defendant's works are, if the defendant created his independently, without knowledge of or exposure to the plaintiff's work, the defendant is not liable for infringement." *Id.* Furthermore, "proof of actual copying is necessary but not sufficient to establish liability for infringement." *Design Basics* at 887. "'Not all copying...is copyright infringement,' so the plaintiff must also prove that the defendant's copying was wrongful—i.e., that the defendant took enough of his protected expression (as opposed to unprotectable ideas, concepts, facts, etc.) to constitute unlawful appropriation of his expressive work." *Id.* quoting *Feist*, 499 U.S. at 361.

The mere registration of a copyright is the simplest of hurdles. As it was long ago recognized, "[a] deposit of two copies of the article or work with the librarian of congress, with the name of the author and its title page, is all that is necessary to secure a copyright. It is therefore much more important that when the supposed author sues for a violation of his copyright, the existence of those facts of originality, of intellectual production, of thought, and conception on the part of the author should be proved…" *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 59–60 (1884).

Plaintiff purports to have copyrights over the most basic of Halloween tropes. They include a generic skull, spiders, jack-o-lanterns, zombie hands, black cats, and bats. There is nothing to show that any such basic, ubiquitous, imagery exhibits any significant originality so as to entitle the works to copyright protection. Such basic elements are mere scenes-a-faire that are not properly subject to copyright protection in the first place. That doctrine teaches that a copyright owner can't prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another. *Reed–Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 913–14 (7th Cir.1996). And, in a case where the purported copyrighted work is based on work in the public domain—which is unquestionably the case here—there must be "expressive variation from public-domain or other existing works to enable the new work to be **readily distinguished** from its predecessors." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 929 (7th Cir. 2003), emphasis added.

In short, there is a high likelihood that Plaintiff's purported copyright material is insufficiently original to pass muster and be entitled to any significant copyright protection. Because of the extraordinary degree of generality of the subject matter, there is nothing to show that the material is actually original to Plaintiff beyond its bald assertion of authorship. That is not a sufficient to establish the "clear showing" that Plaintiff will be successful on the merits.

**D. The Issuance of an Injunction Is a Disservice to the Public**

Plaintiff asserts that an infringer cannot complain about not being able to sell an infringing product. While that may be true, there is a substantial question in this case regarding the viability of Plaintiff's infringement claim. For the reasons discussed above, it is highly likely that Plaintiff's claim will ultimately fail.

Here, the public, i.e. customers, have already been damaged because they have been deprived of access to the free market—albeit unknown to them. The law has long recognized that the public is the ultimate beneficiary of a competitive marketplace. *See Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 11-13 (7th Cir. 1992); *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir.1986); *Am. Hosp. Supply Corp. v. Hosp. Products Ltd.*, 780 F.2d 589, 593–94 (7th Cir.1986); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387–88 (7th Cir.1984). Indeed, access to the free market is what led the Supreme Court to condemn practices that would limit the public's access to unpatented articles (like those here). *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 452 (2015)(An unpatented article is "in the public domain and may be made and sold by whoever chooses to do so…Allowing even a single company to restrict its use…would deprive the consuming public of the advantage to be derived from free exploitation of the discovery.") cleaned up.

Skulls, spiders, witches, zombies, and pumpkins are the most generic of Halloween iconography. The public is entitled to an open market where it can determine what it wishes to purchase. If, ultimately, Plaintiff somehow manages to establish that it actually has a protectable right to some modicum of creativity, the worth of that subject matter can be assessed and, if a jury believes it to be infringed, the jury can award damages to compensate Plaintiff. But such compensation should not come at the public's expense during the course of a litigation where Plaintiff has done nothing to prove its case.

## V. Conclusion

This Court does not have jurisdiction over Caichi Apparel. Accordingly, it (including the 35 stores named as Defendants in this suit) must be dismissed. The TRO entered by this Court against the Caichi Apparel stores must be immediately dissolved. And this Court should deny Plaintiff's motion for a preliminary injunction as to Caichi Apparel and its stores.

Respectfully submitted,

Dated: January 21, 2025

*/s/ Matthew De Preter*

Matthew De Preter
Sofia Quezada Hastings
ARONBERG GOLDGEHN
225 West Washington, Suite 2800
Chicago, Illinois 60606
312.828.9600
cdepreter@agdglaw.com

*Attorneys for Shenzhen Caichi Apparel Co., Ltd.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of January, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF, which will send notification to the registered attorney(s) of record that the documents have been filed and are available for view and downloading.

By: *<u>/s/ Matthew De Preter</u>*
*Attorney for Shenzhen Caichi Apparel Co., Ltd.*

4902-4417-5372, v. 1