**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Yiwu Baimei Electronic Commerce Co., Ltd.,<br>a Chinese Limited Corporation<br><br>Plaintiff,<br><br>v.<br><br>The Partnerships And<br>Unincorporated Associations<br>Identified On Schedule "A"<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case: 24-cv-12074<br><br>Judge: Lindsay C. Jenkins<br><br>Mag. Judge: Jeannice W. Appenteng |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JURISDICTIONAL DISCOVERY**

## I. SUMMARY OF THE ARGUMENT

Defendants' Motions are a factual attack upon Plaintiff's jurisdictional allegations. Plaintiff has established a prima facie showing of personal jurisdiction. The factual record on jurisdiction is ambiguous and unclear. The scope of jurisdictional discovery should be broad. The Court should stay briefing and decision on the Defendants' Motions until Plaintiff completes jurisdictional discovery and, should it not be inclined to grant the instant request, should permit Plaintiff sufficient time to respond.

## II. ARGUMENT

### a) Defendants' Motions are a factual attack upon Plaintiff's jurisdictional allegations.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotations and citations omitted). When

considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

To decide whether a plaintiff has satisfied the minimal burden for jurisdictional discovery, this court "consider[s] the record in its entirety and draw[s] all inferences in [the plaintiff's] favor, while bearing in mind the fact that, without discovery, it is not surprising that [the plaintiff] can do little more than suggest that [a defendant] currently has minimum contacts." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 864 (7th Cir. 2024) (citation and punctuation omitted) Allowing a plaintiff to conduct jurisdictional discovery is within the Court's discretion. *Sanderson v. Spectrum Labs, Inc.*, No. 00 C 1872, 2000 WL 1909678, at *3 (7th Cir. Dec. 29, 2000). However, "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Co.*, 230 F.3d 934, 946 (7th Cir. 2000). "The standard is not particularly onerous, but a plaintiff's request will be denied if it is based only upon unsupported assertions of personal jurisdiction." *Calloway v. AT&T Corp.*, No. 18 C 6975, 2019 WL 4694724, at *3 (N.D. Ill. Sept. 26, 2019). In general, courts allow jurisdictional discovery if the plaintiff can show an ambiguity exists or that some jurisdictional facts are unclear. *JT's Frames, Inc. v. Casares*, No. 16 C 2504, 2018 WL 835225, at *3 (N.D. Ill. Feb. 13, 2018). Further, the plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006); *Kosar v. Columbia Sussex Mgmt., LLC*, No. 20 C 1736, 2021 WL 4499494, at *1–2 (N.D. Ill. June 1, 2021) (Ellis, J.) (granting jurisdictional discovery upon finding an ambiguity in the record).

In its Complaint [D.E. 1], Plaintiff specifically alleged that this Court has personal jurisdiction over all named defendants based on the following conduct alleged within the paragraphs cited:

> Paragraph 2: Defendants are subject to personal jurisdiction in the Northern District of Illinois because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the State of Illinois and the Northern District of Illinois, through at least, operating under Seller IDs on the internet based e-commerce stores accessible in Illinois.
>
> Paragraph 3: Defendants are subject to personal jurisdiction in this judicial district because they have purposefully directed some portion of their illegal activities towards consumers in the State of Illinois through the advertisement, offer to sell, sale, and/or shipment of goods utilizing Plaintiff's federally registered Hollow Halloween Works in Illinois and Plaintiff's claims arise out of those activities.
>
> Paragraph 4: Alternatively, Defendants are subject to personal jurisdiction in this District pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.
>
> Paragraph 11: The Defendants' Seller IDs share unique identifiers, such as design elements and similarities of the products offered for sale utilizing unauthorized and infringing copies of the Plaintiff's Hollow Halloween Works, which establishes a logical relationship between them. Defendants' Seller IDs likewise suggests that their illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities, including the full scope and inner workings of their illegal operations. Plaintiff is forced to file this action to combat Defendants' acts of copyright infringement. Plaintiff is and continues to be irreparably damaged through consumer confusion, loss of control over creative content and garnishment of his valuable copyrights as a result of Defendants' actions. Plaintiff seeks injunctive and monetary relief against such acts of the Defendants.
>
> Paragraph 24: Defendants are individuals and businesses who conduct and engage in business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces identified in Schedule "A". Each Defendant targets the United States, including Illinois, and has solicited, marketed, promoted, and advertised their products in a manner that violates Plaintiff's rights in its federally protected Hollow Halloween Works.
>
> Paragraph 25: While the Defendants' true identities and locations are now unknown to Plaintiff, upon information and belief, Defendants are individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Defendants

have employed tactics to conceal their identities and the full scope of their infringing activities. Consequently, it is virtually impossible for Plaintiff to learn Defendants' true identities and the exact inner workings of their network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

Paragraph 32: Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

Paragraph 39: Defendants often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of online stores. For example, to avoid detection, Defendants register their online stores using names and physical addresses that are incomplete, contain randomly typed letters, or fail to include cities or states. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the Seller IDs listed in Schedule "A" to the Complaint, as well as other unknown fictitious names and addresses. Such registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and inner workings of their network in order to avoid being shut down.

Paragraph 43: Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use Plaintiff's Hollow Halloween Works in products depicted in the advertisements, displays, distribution and offers for sale on their internet stores. Each of the Defendants' online stores offers shipping to the United States, including Illinois and each Defendant has offered to sell retail items into Illinois and this District utilizing unauthorized and infringing images of Plaintiff's Hollow Halloween Works.

Yet, with Plaintiff having clearly pled that jurisdiction is proper before this Court due to the Letesi Defendants having **sold** goods utilizing Plaintiff's copyright protected images, the Letesi Defendants' Motions are limited to generic recitations of law concerning jurisdiction and a declaration claiming no sales to Illinois. [D.E. 30 and 39]. Assuming, but not admitting, that sales of goods utilizing Plaintiff's copyright protected images into Illinois, or to the United States under Fed.R.Civ.P. 4(k)(2), are required in order to establish personal jurisdiction over the Letesi

Defendants, Plaintiff's Complaint, as set out above, clearly contains allegations that Letesi Defendants did in fact consummate such sales.

In *NBA Properties, Inc. v. HANWJH*, our Court of Appeals held that jurisdiction was proper because the defendant had "established an online store, using a third-party retailer, Amazon.com. Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so. When an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated Illinois address." 46 F.4th 614, 622, 624 (7th Cir. 2022). The Seventh Circuit dismissed the defendants' argument that a single sale was insufficient to establish personal jurisdiction under the Lanham Act. *Id*. at 624-5. Quite notably, while the case before it involved the single sale of a counterfeit product into the forum, the *NBA Properties* Court acknowledged that "Moreover, there need not be an actual sale to demonstrate trademark infringement; merely listing for sale a product that is likely to cause confusion violates the Lanham Act." *Id*. at 614, FN.18, citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998) ("Infringement can be based upon confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:6 (4th ed. 1997)); see also 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:12 (5th ed. 2022) ("[W]here allegedly infringing sales have been minimal to date, to require any proof of actual confusion would unfairly penalize the trademark owner for acting promptly to 'protect its trademark rights before serious damage has occurred.' " (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986))). Thus, while the *NBA Properties* Court held that a single sale of a counterfeit product into Illinois is sufficient to establish personal jurisdiction under the Lanham Act, the decision cannot be read to

require that a sale be consummated. Similar to the Lanham Act's inclusion of an offer for sale of a counterfeit or infringing item as an act for which liability may attach, the Copyright Act establishes that copyright holders have the exclusive right to display pictorial or graphic works publicly. (517 U.S.C.A. § 106(5) (West). It naturally follows that where, as here, the Letesi Defendants do not deny their display of a protected image but instead deny sales of goods attributable to the use of the protected image, in the absence of the identification of any jurisdiction that might have a superior interest in the adjudication of Plaintiff's rights, Plaintiff is entitled to a forum in which to vindicate its statutorily established rights. To find otherwise would be to judicially amend the pertinent sections of the Copyright Act and to deny Plaintiff a remedy.

The Court need not determine, at this stage, whether sales achieved through the Letesi Defendants' use of Plaintiff's copyright protected images is necessary to establish personal jurisdiction. Rather, it needs only grant Plaintiff jurisdictional discovery so that it may proceed with complete information. Should Plaintiff's investigation ultimately reveal that no relevant sales were made into the United States by the Letesi Defendants, Plaintiff will address personal jurisdiction on this record. However, as set out above, Plaintiff alleges that jurisdiction is proper before this Court and in the United States generally due to the Letesi Defendants' sales of goods utilizing Plaintiff's intellectual property. Without jurisdictional discovery, Plaintiff is without sufficient information to address the Letesi Defendants' denial of having consummated sales in this case where they do not and cannot deny displaying Plaintiff's copyright protected images without its knowledge or consent.

**b) Plaintiff has established a prima facie showing of personal jurisdiction.**

The Court found that Plaintiff has made a *prima facie* showing of personal jurisdiction by

granting, and extending Plaintiff's motion for temporary restraining order. [D.E. 17]. Here, as set out above, Plaintiff alleges and has submitted evidence that sales utilizing Plaintiff's copyright protected images were in fact made. The Letesi Defendants deny that relevant sales were made. Assuming that such sales are necessary for this Court to exercise personal jurisdiction over the Letesi Defendants, there is a factual dispute in the record that the Court should resolve in Plaintiff's favor. See *States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006). Jurisdictional discovery will permit Plaintiff to determine if and to where any relevant sales were made.

**c) The factual record on jurisdiction is ambiguous and unclear.**

In its Complaint, Plaintiff apprised the Court of the deceptive tactics that overseas pirating copyright infringers such as the Letesi Defendants employ to avoid liability and being shut down, including the fraudulent registration of multiple ecommerce storefronts utilizing false names and other identifying information. [D.E. 1 at ¶¶ 11, 25-30, 32, 34, and 37-42] Plaintiff also explicitly acknowledged that it did not know the identity or location of all defendants. [Id. at ¶25] This situation is not unique to Plaintiff here but is common to Schedule A cases, with the dynamic set out in detail by Judge Durkin in *Hangzhou Chic Intelligent Tech. Co. v. Partnerships & Unincorporated Associations Identified on Schedule "A," to wit:*

> Despite the age of this case and ongoing discovery, the corporate identities of the remaining defendants and the relationships among them are not clear to the Court. The "defendants" continue to be identified primarily by eBay and Amazon storefront names. But just like the physical address of a real storefront is not generally a legal entity, internet storefronts aren't either. **Storefronts, whether real or virtual, are not the business itself, but are tools that the business, whether a person or corporate entity, uses to sell its goods.**
>
> Despite the fact that "storefronts" are generally not legal entities, courts sometimes permit plaintiffs to initiate a case by naming the internet storefronts as defendants. That is because in cases like this alleging sales of counterfeit goods over the internet by sellers allegedly located outside the United States, the storefront names are often

> the only information the plaintiffs have about the sellers. Customarily, courts freeze the assets associated with the storefront according to eBay's or Amazon's records, which causes the storefronts' owners to appear and frequently reach settlements with the plaintiffs. That is what happened in this case for the majority of the original 94 internet storefronts that Plaintiffs identified in their initial complaint. Under those circumstances, the Court never needs to know the true identities of the owners of the storefronts. No. 20 C 4806, 2022 WL 1028834, at *1–2 (N.D. Ill. Apr. 6, 2022) [Emphasis Added]

In circumstances virtually identical to those here, Judge Durkin found that full identification of the parties in Schedule A cases is necessary where a defendant moves to dismiss for lack of personal jurisdiction. In so finding, Judge Durkin noted that the movant "could be so closely related to other people or entities such that their contacts with Illinois can be imputed to [Movant]. Or, to the extent [Movant] does not have sufficient contacts with Illinois, it may have sufficient contacts with another state such that Rule 4(k)(2) requires [Movant] to be sued there." *Id*. at 2. Judge Durkin reasoned that "[T]he Court must know the relationships among the remaining defendants, in order to address the instant motion to dismiss in particular, and to fairly manage and adjudicate this case generally." *Id*. at 2. Judge Durkin ultimately ordered that the movant file a statement fully identifying itself and its affiliates and stating whether there was any other state with which it has contacts sufficient to support the exercise of personal jurisdiction over it. *Id*.

Notably, the Letesi Defendants nowhere deny or attempt to refute Plaintiff's allegations as to their deceptive business practices, thus requiring resolution, for purposes of this motion and the Motion to Dismiss, in Plaintiff's favor. The Letesi Defendants' admissions are bolstered by the failure and refusal of the Letesi Defendants to properly file their affiliate disclosures as required by Fed.R.Civ.P. 7.1 and Local Rule 3.2.

Fed.R.Civ.P. 7.1 states, in pertinent part, as follows:

(a) Who Must File; Contents.

(1) Nongovernmental Corporations. A nongovernmental corporate party or a nongovernmental corporation that seeks to intervene must file a statement that:

(A) identifies any parent corporation and any publicly held corporation owning 10% or more of its stock; or

(B) states that there is no such corporation.

(b) Time to File; Supplemental Filing. A party, intervenor, or proposed intervenor must:

(1) **file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court**; and

[Emphasis Added]

LR 3.2 Notification as to Affiliates states as follows:

(a) **Definition. For purposes of this rule, "affiliate" is defined as any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party.**

(b) Who Must File. Any nongovernmental party, other than an individual or sole proprietorship, shall file a Notification of Affiliates.

(c) Required Information. A Notification of Affiliates shall identify all of the party's affiliates known to the party after a diligent review; or state that after a diligent review the party has identified no affiliates.

(d) Time for Filing. **A party must file the statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court.**

[Emphasis Added]

Fed. R. Civ. P. 7.1 is intended to help judges be properly informed of potential conflicts of interest that might justify disqualification. See Advisory Committee Note, Fed. R. Civ. P. 7.1. LR 3.2 is likewise established "to assist judges in determining, as required, whether they need to recuse themselves under 28 U.S.C. § 455(b)(4) ("Section 455(b)(4")." *Elektra Ent. Grp., Inc. v. Cranford*, No. 06 C 4781, 2006 WL 8460952, at *1 (N.D. Ill. Sept. 8, 2006) "Although it seems unlikely that the entities referred to here pose a problem for this Court in Section 455(b)(4) terms, this is one area in which certainty rather than probability controls." *Id.* While Plaintiff

acknowledges that "District courts have considerable discretion in interpreting and applying their local rules . . .," *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 549 (7th Cir. 2017), Plaintiff respectfully submits that the Court should not permit the Letesi Defendants to force Plaintiff and the Court to proceed in the face of the risk that any order entered might later be subject to question where they could easily comply with both Rules but have chosen not to. Plaintiff also submits that the Letesi Defendants' deceptive conduct fully demonstrates the need for jurisdictional discovery in this case sufficient to permit Plaintiff to determine the inner working of their overseas pirating copyright infringement network.

These facts serve as a reminder that overseas, internet based counterfeiting and pirating copyright infringement is an inherently deceptive business. see *YETI Coolers, LLC v. The Individuals*, 21-cv-62008-BLOOM/Valle, at *8 (S.D. Fla. Oct. 14, 2021) ("In light of the inherently deceptive nature of the counterfeiting business...") The audacity of these defendants in attempting to deceive courts as to their identity and avoid liability has also been demonstrated in this judicial district. see *Camelbak Products LLC v. The Partnerships and Unincorporated Associations Identified On "Schedule A"*, 1:20-cv-01544 (N.D. Ill. January 5, 2021) (Doc. 105 at 3) ("[T]he Court does not believe that the identification card submitted in support of [defendant]'s motion to vacate the default judgment is the actual identification card for the person who owns and operates [defendant]. It is either a fake identification card, or it is someone else's identification card.")

Those that take part in subsidized litigation before federal courts are required to fully identify themselves. As the Seventh Circuit has explained, "We have repeatedly voiced our disfavor of parties proceeding anonymously, as anonymous litigation runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and

procedures funded by public taxes." *Doe v. Village of Deerfield*, 819 F.3d 372, 376-77 (7th Cir. 2016) (citation omitted); see also *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005) ("[T]his circuit's decisions . . . disfavor anonymous litigation. . . . The public has an interest in knowing what the judicial system is doing, an interest frustrated when any part of litigation is conducted in secret."); *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997) ("Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts."); *In re Boeing 737 Max Pilots Litig.*, 2020 WL 247404, at *1 (N.D. Ill. 2020) ("The duty to self-identify is a small part of a much bigger tradition of transparency in federal court. . . . The public has a legitimate interest in the facts of a lawsuit, and the most basic fact is who is suing whom."). In addition to the public policy concerns set out above "Opponents are entitled to know with whom they are litigating, so that they can respond to arguments based on facts and law relevant to the individuals involved." *Shakman v. City of Chicago*, No. 9 C 2145, at *2-3 (N.D. Ill. Sep. 1, 2009).

With the Letesi Defendants having failed to properly identify themselves, if not deceptively seeking to hide their identities and the inner working of their network from Plaintiff and the Court, an ambiguity exists in the record between the allegations of Plaintiff's Complaint, [D.E. 1] and the Moving Defendants' declaration, [D.E. 30-1] to more than meet the minimal standard necessary for the Court to authorize jurisdictional discovery.

**d) The scope of jurisdictional discovery should be broad.**

Where, as here, Letesi Defendants maintain that they lack sufficient contacts to be subject to the jurisdiction of any state, and Plaintiff invokes Fed.R.Civ.P. 4(k)(2) as one potential basis for a finding of personal jurisdiction, the scope of jurisdictional discovery encompasses all of Letesi Defendants' contacts with the United States as a whole. See *Goss Int. Americas v. Graphic*

*Management Associates*, No. 05 C 5622, at *2-3 (N.D. Ill. Jan. 11, 2007) ("Jurisdiction over the Swiss Defendants is properly premised on Rule 4(k)(2) because (1) the claims in this patent case arise under federal law, and (2) in their motions to dismiss and at oral argument, the Swiss Defendants have maintained that they lack sufficient contacts to be subject to the jurisdiction of any state. Therefore, the scope of relevant discovery is broad, and the Swiss Defendants should produce all documents relevant to their contacts with the United States as a whole, not merely their contacts with the forum state...")

Even without consideration of the inquiry under Fed.R.Civ.P. 4(k)(2), the scope of jurisdictional discovery is appropriately broad as Plaintiff, as in *Zinkia Entertainment v. The Partnerships, et al.*, seeks and is entitled to answers to questions which Movants' evidentiary presentation leaves hanging in the air, *to wit*:

> What other products, other than the products identified previously by [Plaintiff], were the Defendants selling, and how many of the products are infringing? If the "allegedly infringing products" were not sold to anyone in Illinois, where have the products been sold to, and to whom exactly have they been sold to? Are there any marketing efforts related to Defendants' accused products and incorporating these products into established channels of commerce to consumers in the Northern District of Illinois, the State of Illinois, and the United States? What stores, other than the defendant stores at issue, do the Defendants also operate? Are those stores selling products infringing [Plaintiff's]'s rights? What is the Defendants' overall revenue from sales of all products into the Northern District of Illinois, the State of Illinois, and the United States? Can those sales revenues be verified by Defendants' payment of taxes to the United States Internal Revenue Service or revenue service of any state or county in the United States? Case No. 21-cv-916 (N.D. Ill. June 1, 2021) (Doc. 65 at 2-3). (granting jurisdictional discovery in intellectual property case involving foreign defendant seeking dismissal for lack of personal jurisdiction).

See also *Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, Judge Jenkins faced a scenario where, as here, the defendants denied having made any sales. No. 24 CV 607,

2024 WL 3338942, at *3 (N.D. Ill. July 9, 2024) (denying motion to dismiss where lack of sales claimed by foreign entity in Schedule A case, where, as here, "Defendants do not dispute, that they conduct e-commerce business in Illinois generally.")

**e) The Court should stay briefing and decision on the Defendants' Motions until Plaintiff completes jurisdictional discovery and, should it not be inclined to grant the instant request, should permit Plaintiff sufficient time to respond.**

Alternatively, should it not be inclined to grant the instant request, this Court should permit Plaintiff sufficient time to respond to the Letesi Defendants' Motions.

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant it all relief requested in its Motion. Moreover, the Court should send a strong message to the Letesi Defendants that when they or others come before an American federal district court, the deceptive tactics that they utilize in their pirating infringement operations must be checked at the door. The Letesi Defendants and others similarly situated must fully and completely identify themselves as a prerequisite to prosecuting or defending claims.

Respectfully submitted this 6th day of February 2025.

By: /s/ Michael T. Stanley

Michael Stanley
IL Bar No.: 6284055
Ford Banister LLC
111 W. Jackson Suite 1700
Chicago, Illinois 60604
Telephone: 212-500-3268
Email: mstanley@fordbanister.com
Attorney for Plaintiff