**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Yiwu Baimei Electronic Commerce Co., Ltd., a Chinese Limited Corporation | ) | Case: 24-cv-12074 |
| Plaintiff, | ) | Judge: Lindsay C. Jenkins |
| v. | ) | Mag. Judge: Jeannice W. Appenteng |
| The Partnerships And Unincorporated Associations Identified On Schedule "A" | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT (NO. 12) ELANA JEWELRY BOX'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE (D.E. 114)**

COMES NOW, Plaintiff, by and through the undersigned counsel, and respectfully submits its response in opposition to Defendant (No. 12) Elana Jewelry Box's Motion to Vacate, Set Aside or Correct Sentence (D.E. 144). Plaintiff respectfully submits that Defendant has not established good cause, nor any meritorious defense to support vacating the default. In support thereof, Plaintiff states:

***Procedural Background***

1. On February 20, 2025, this Court entered partial Default against certain Defendants, including Defendant Elana Jewelry Box. (D.E. 90).

2. On April 1, 2025, Elana Jewelry Box filed its in CM/ECF as Motion to Vacate, Set Aside or Correct Sentence (2255)[1]. (D.E. 114). Specifically, Defendant argues that "[t]here is good

[1] Defendant filed its motion under 28 U.S.C. § 2255 motion, or a "2255 motion," which is generally recognized as a legal tool used for federal inmates to challenge a conviction or sentence from a violation of the Constitution or laws of the United States. The undersigned

cause because Defendant's default was inadvertent, and the harm of the default judgment is disproportionate to the wrong." (D.E. 114-1 at 3).

3. Plaintiff files its opposition to Plaintiff's Motion and requests for this Court to deny Plaintiff's Motion to Vacate.

**MEMORANDUM OF LAW**

This memorandum will address the two issues raised by Defendant in support of its request to vacate default judgment in this case. First, Defendant has not established good cause for failing to timely respond to the Complaint. Specifically, Defendant had the opportunity to challenge its case timely and elected not to do so. Second, Defendant does not have any meritorious defenses to present and therefore there is no basis to vacate the judgment. This memorandum concludes that this Court should deny Defendant's Motion to Vacate.

## I. STANDARD OF LAW

"Federal Rule of Civil Procedure 60(b) permits a party to seek relief from a final judgment, order, or proceeding on the grounds of mistake, inadvertence, excusable neglect, newly discovered evidence, or fraud. It is well-established that Rule 60(b) relief 'is an extraordinary remedy and is granted only in exceptional circumstances'." *Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir. 1994). *See also Jones v. Phipps*, 39 F. 3d 158, 162 (7th Cir. 1994) ("Rule 60(b)(1) provides that '[o]n a motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding' upon a showing of 'mistake, inadvertence, surprise, or excusable neglect.' Our review of district court orders denying this relief is exceedingly deferential and is limited to discerning whether the district court abused its discretion. Only if no reasonable person could agree with the district court's

---

presumes that this is a typo, as the memorandum references Fed.R.Civ.P. 60(b)(1) and the undersigned will treat the Defendant's Motion as moving pursuant to Fed.R.Civ.P. 60(b)(1).

decision will it be disturbed.”). Rule 60(b) relief from a default judgment is an extraordinary remedy and is granted only under exceptional circumstances. *Ben Sager Chemicals International v. E. Targosz & Co.,* 560 F.2d 805, 809 (7th Cir.1977).

As the Rule 60(b)(1) standard has developed, a specialized three-part standard has evolved which squarely places the burden on the moving party to show: (1) "good cause" for vacating the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint. *Jones v. Phipps*, 39 F. 3d 158, 162 (7th Cir. 1994). “This narrowness is achieved by interpreting the three-part standard in light of the language of Rule 60(b)(1) which, by its very terms, establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment.” *Id.*

## II. DEFENDANT HAS NOT DEMONSTRATED GOOD CAUSE FOR HAVING NOT RESPONDED TIMELY TO THE COMPLAINT

Defendant was dilatory in moving to vacate the motion for default and therefore relief should not be granted. The facts reflect that Defendant had repeated notice of the instant suit and repeatedly chose not to act. On December 8, 2025, Defendant received notice of the suit from Amazon by email to its registered email address 745550209@qq.com. (D.E. 114-2 at ¶6, 114-3). On December 23, 2025, Defendant was served with the Summons, Complaint, Preliminary Injunction, and this Court’s Minute Order to the (same) registered email address 745550209@qq.com. (D.E. 24, 25; *see also* Declaration of L. Pittaway, attached hereto as Exhibit One). On February 13, 2025, Defendant was served with the Motion for Entry of Default and Final Judgment to the (same) registered email address 745550209@qq.com (D.E. 73; Exh. One).

While Defendant admits to having received notice of the suit from Amazon on December 8, 2025, Defendant fails to address having also received the e-mail service on December 23, 2025 and February 13, 2025 through the same email address. Defendant in particular cannot show good cause for having not acted upon the February 13, 2025 notice of default. It is an aggravating circumstance that Defendant knew of the instant suit on December 8, 2025, and then ignored or disregarded the notice of the suit on December 23, 2025 and then the notice of default on February 13, 2025.

Defendant states that it had an agent, Fuzi, who "never explained the nature of this lawsuit to us or provided other details of the case. Neither did Fuzi inform us that the deadline to file an answer was January 13, 2025. Fuzi also did not tell us what consequences would follow a default judgment." (D.E. 114-2 at ¶11). However, the Defendant received this Court's Minute Order (D.E. 70) and was advised of the following language in bold and in the body of the email:

> **Be advised that any objections to the motion for entry of default judgment must be filed on or before February 19, 2025. If no objections are filed by that date, the court will consider the motion unopposed. The Court will also rule on the papers unless a hearing is requested by February 14, 2025. A hearing may be requested by filing a Request for Hearing as a separate entry on the docket. Plaintiff must serve this minute order upon all remaining Defendants within one business day of its entry on the docket and must promptly file proof of that service.**

(*See* Service Email, attached hereto as Exh. Three). Yet Defendant did not act on lifting the default until April 1, 2025, nearly six weeks after the objection date. Even if Defendant's statements regarding the actions of its agent Fuzi are correct, Defendant should not have allowed for its own email notices to go ignored.

Defendant states that it was not familiar with court processes and procedures, but ignorance of the law is no excuse. Additionally, while the Declarant states that "[t]his lawsuit (Case No. 1:24-cv-12074) is Elena's first experience with litigation," that is not true. (D.E. 114-2

at ¶5). Elana Jewelry Box was identified as Defendant Number 29 in *Chrome Hearts LLC v. The Partnerships and Unincorporated Associations Identified on Schedule A*, Case No. 2023-cv-02391 (N.D.Ill. Sept. 21, 2023).[2] After having some knowledge from a prior lawsuit, and its own admission of having received a similar TRO, Defendant did not retain counsel until after the default had been entered.

Under these circumstances, this Court should hold Defendant accountable for its choice to proceed with an agent, counsel, or without counsel. Afterall, it is basic that the conduct of one's lawyer is imputed to the client. *See, e.g., United States v. 8136 S. Dobson St., Chicago, Ill.*, 125 F.3d 1076, 1084 (7th Cir. 1997). "When lawyers fail, the remedy is malpractice litigation against the wrongdoer, not more litigation against an innocent adversary in the original litigation." *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 754 (7th Cir. 2015); *see also Traditional Baking*, 570 F.3d 849 ("Malpractice, gross or otherwise, may be a good reason to recover from the lawyer but does not justify prolonging litigation against the original adversary.").

In *Link v. Wabash R.R.*, 370 U.S. 626 (1962), the Supreme Court reviewed a case where the district court had dismissed a plaintiff's negligence suit after the plaintiff's counsel failed to appear at a pretrial conference. The Court found that "Petitioner's counsel received due notice of the scheduling of the pretrial conference, and cannot now be heard to say that he could not have foreseen the consequences of his own default in attendance." *Id.* at 636. Ultimately, the Court held that litigants are bound by the acts and omissions of their chosen agents, including lawyers, and that legal bungling therefore does not justify reopening a judgment.

---

[2] Defendant Elana Jewelry Box was dismissed pursuant to a Notice of Voluntary Dismissal. (D.E. 35).

Defendant cites to *A.F. Dormeyer Co. v. M.J. Sales & Distributing Co.*, 461 F.2d 40, 41 (7th Cir 1972), which reversed a district court's order denying the motion to vacate default judgment "where an attorney failed to file an answer, which resulted in a default judgment." However, that case is readily distinguishable from the instant case. In that 1972 case, the defense attorney had mailed a copy of the Answer to the Plaintiff's counsel, but not to the Clerk of Court because in his home venue, that was common practice. *Id*. Significantly, the defendant in that case had not received notice of the default prior to the entry of judgment. *Id*. at 42.

In stark contrast to *A.F. Dormeyer Co.*, 461 F.2d 40, Defendant Elana Jewelry Box received service of the Complaint, Motion for Preliminary Injunction, as well as the Motion for Default Judgment and this Court's Minute Order. Even if the Defendant did not open the attachments, the body of the email contained bold font advising the Defendant of deadlines. *See* Exh. One and Three. Yet Defendants, trying to save money, delayed hiring counsel to appear in the matter. Defendants should not now be able to escape accountability because they ignored the service emails. If every defendant who regretted its choice of agent or counsel were able to vacate a default judgment despite having ignored legal notices and have a second bite at the proverbial apple, there would be no certainty in litigation. That is where prejudice lies.

Defendant also references in support of its case *U.S. v. Forty-Eight Thousand, Five Hundred Ninety-Five Dollars*, 705 F.2d 909 (7th Cir. 1983). However, that case is factually distinguishable from the instant case. In that case, two defendants had over $48,000 confiscated at a U.S. airport after having failed to disclose the currency on a customs form. *Id*. While each were imprisoned (one of whom was imprisoned in Germany), the government moved for forfeiture of the funds. *Id*. Within a month after the defendant was released from the prison in Germany, he hired counsel and moved to vacate the default judgment, which was denied by the

district court. *Id*. In its reasoning vacating the default judgment, the Seventh Circuit held that there were issues with the notice of forfeiture proceedings. *Id*. at 912-913. Specifically, the Seventh Circuit found that service to the attorneys which represented the defendants at bond proceedings did not constitute effective notice of the forfeiture and notice to the defendant in a foreign prison with little ability to consult with an American attorney "precluded [him] from acting to protect his interests." *Id*. at 913. In addition, the Seventh Circuit found that there was a potentially meritorious defense where there was no indication that the funds "bore in any way the taint of illegality." *Id*. at 911, 914-915. In entirety, Defendant's argument is unsupported by case law and therefore waived. "It is axiomatic that arguments not supported and properly developed are deemed waived." *Beres v. Daily Journal Corp.*, 0:22-CV-60123-WPD, 2022 WL 805733, at *6 n.6 (S.D. Fla. Mar. 8, 2022) (J. Dimitrouleas) (citations omitted).

In the instant case, the Defendant was freely able to consult with counsel at the time that the proceedings were ongoing and intentionally chose not to consult with counsel to avoid paying higher legal fees in this case. Furthermore, Defendant has not presented a meritorious defense that would negate its involvement. Indeed, the evidence reflects that Defendant utilized Plaintiff's registered copyright images in its listing for sale. Defendant's denial of knowledge that Plaintiff owned the registered copyright is insufficient to avoid liability in this case. While the criminal prosecution of copyright violation may require a mens rea, it does not in a civil context.

## III. DEFENDANT HAS NOT PRESENTED MERITORIOUS DEFENSES

In its Declaration, the store seemingly accepts ownership, management, operation and creation of the listing for sale utilizing Plaintiff's registered copyrights and having over 1,000 sales of the product. (D.E. 114-2 at ¶15). Plaintiff also claims innocent infringement because of

its reliance upon its distributor. (D.E. 114-2 at ¶16). In its entirety, these facts, nor any applicable case law support a meritorious defense. In its argument, Defendant fails to appreciate the nature of statutory damages, which is to vindicate the statute and to provide damages at Plaintiff's election. *See F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952) ("Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy.")

Defendant denies knowing that the copyright was registered and claims innocent infringement. However, its reliance upon the distributor and its Google search will not save it. Willfulness requires a showing that Defendant acted with knowledge of infringement or a reckless disregard of the copyright holder's rights. Simply denying knowledge that something was subject to a copyright registration is insufficient to dispel knowledge and willfulness.

"A finding of willfulness is justified if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994) (internal quotation marks omitted). Although "evidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness, it is not the only way that willfulness can be established." *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1021 (7th Cir. 1991), overruled on other grounds, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 521 n.8 (1994).

As explained by the district court in *Columbia Pictures Industries, Inc. v. Garcia*, 996 F.Supp. 770, 772 (N.D.Ill. Jan. 26 1998)(Aspen, J.) in the context of a defendant claiming innocent infringement for renting unauthorized duplicates of copyright movies:

> Under this reasoning, if one unauthorized duplicate videotape was labeled with a believable reproduction of the original label (and thus bore a copyright mark) while another had a handwritten label (without a copyright mark), the distributor of the first videotape could not claim innocent infringement but the second could, despite the fact that it is the second distributor who has no credible claim of innocence. It seems unlikely that Congress intended such a perverse outcome.

In addition, evidence of past reluctance by copyright infringer to pay copyright fees is relevant in assessing willfulness of infringer's present infringements. 17 U.S.C.A. § 504(c)(2). *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224 (7th Cir. 1991). In the instant case, Defendant has had a prior lawsuit for infringing intellectual property and does not profess to have searched the catalog of copyright registrations for the designs that it offered for sale. Defendant simply did what appears to be a general Google search and trust that its distributor did not offer designs in violation of copyright registrations. If the distributor in the prior case was the same distributor in this case, Defendant was even more so not likely to have reasonably relied upon "trusting" that the distributor did not offer original products.

## IV. PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE

Plaintiff has submitted to the Court evidence of its copyright registration, as well as Defendant's listing for sale displaying Plaintiff's registered trademark. (Plaintiff's Registration at D.E. 1-1; D.E. 10 at p. 9; Plaintiff's Evidence at D.E. 10-2 at p. 69). Notably, Defendant's Declaration does not deny owning, operating, and creating the offending listing for sale. Therefore there is no dispute regarding ownership and knowledge of the listing for sale.

This Court had sufficient facts before it to find that Plaintiff demonstrated a *prima facie* case to establish copyright liability in the Temporary Restraining Order, Preliminary Injunction, and Final Judgment Order. Notably, in its Motion to Vacate, Defendant did not present any substantive affirmative defense or evidentiary defense to challenge the substance of the Plaintiff's *prima facie* case and evidentiary submission.

## VII. CONCLUSION

In conclusion, Defendant fails to establish why this Court should grant relief to Defendant, provided Defendant's inexcusable delay seeking relief and/or asserting any alleged meritorious defenses. Significantly, Defendant fails to appreciate its own contribution to prolonging the resolution in this matter through unnecessary litigation and unsupported allegations. This Court should deny Defendant's Motion to Vacate.

Respectfully Submitted this 11th of April, 2025.

*/s/ Lydia Pittaway*
Attorney and Counselor at Law
Fla. Bar No.: 0044790
Ford Banister LLC
305 Broadway - Floor 7
New York NY 10007
Telephone: +1 212-500-3268
lpittaway@fordbanister.com