**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Yiwu Baimei Electronic Commerce Co., Ltd., a Chinese Limited Corporation | ) | Case: 24-cv-12074 |
| Plaintiff, | ) | Judge: Lindsay C. Jenkins |
| v. | ) | Mag. Judge: Jeffrey T. Gilbert |
| The Partnerships And Unincorporated Associations Identified On Schedule "A" | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION OF DEFENDANT (NO. 12) ELANA JEWELRY BOX'S MOTION TO VACATE PRELIMINARY INJUNCTION (D.E. 160)**

COMES NOW, Plaintiff Yiwu Biamei Electronic Commerce Co. Ltd., by and through the undersigned counsel, and files its Response in Opposition to Defendant (No. 12) Elana Jewelry Box's Motion to Vacate Preliminary Injunction. (D.E. 160).

***Relevant Procedural History***

1. On November 22, 2024, Plaintiff filed its Complaint alleging copyright infringement. (D.E. 1).

2. On February 11, 2025, Plaintiff moved for partial Default and Final Judgment against defaulting defendants, including Defendant (No. 12) Elana Jewelry Box. (D.E. 69).

3. On February 12, 2025, this Court entered default against Defendant Elana Jewelry Box. (D.E. 70). On February 20, 2025, and without objection, this Court entered final judgment against Defendant Elana Jewelry Box. (D.E. 90).

4. On April 1, 2025, Defendant Elana Jewelry Box filed its Motion to Vacate or Set Aside the Partial Default Judgment. (D.E. 114). Plaintiff filed its Response in Opposition on (D.E. 124) and Defendant filed its Reply (D.E. 134).

5. On April 22, 2025, this Court vacated default and final judgment against Defendant and set May 2, 2025 as the deadline to respond to the Complaint. (D.E. 135).

6. On May 2, 2025, Defendant filed its Answer with Affirmative Defenses and Counterclaims. (D.E. 144).

7. On May 21, 2025, Defendant filed its Amended Answer to Complaint with Affirmative Defenses for scenes a faire, unclean hands and failure to mitigate, as well as a Counterclaim for unenforceability under 17 U.S.C. §411. (D.E. 159).

8. On May 30, 2025, Defendant filed its Motion to Vacate Preliminary Injunction. (D.E. 160).

9. On June 2, 2025, this Court entered a Minute Order which set the deadline of June 13, 2025 for Plaintiff's response to Defendant's Motion to Vacate Preliminary Injunction. (D.E. 160).

10. On June 11, 2025, Plaintiff filed its Motion to Strike Affirmative Defenses (D.E. 167) and Motion to Dismiss Counterclaim (D.E. 166).

## MEMORANDUM OF LAW

Defendant premises its argument to vacate the preliminary injunction on baseless allegations that Plaintiff fraudulently obtained its copyright registration. However, Defendant's premise is fundamentally flawed because it relies exclusively on conclusory language. *Even if* this Court disagrees on that point, this memorandum will discuss why substantively Defendant's allegations contain no verified facts and ultimately have no legal merit. This memorandum concludes that Defendant has made nothing but conclusory statements devoid of any legal merit

to base its request for relief, as a result no circumstances have changed which should cause this Court to reconsider its original finding for injunctive relief, and this Court should deny Defendant's motion.

## I. DEFENDANT RELIES EXCLUSIVELY ON CONCLUSORY LANGUAGE

Defendant relies repeatedly and exclusively on conclusory language. Examples of this conclusory language include where Defendant alleges that "hundreds of small Amazon merchant [sic] who had no actual notice of the proceedings." (D.E. 160-1 at 1). Notably, Defendant does not offer how it has personal knowledge that these other (hundreds) of defendants did not receive notice of the proceedings, or why Defendant has any authority to speak on behalf of the other Defendants.

Second, Defendant alleges that Plaintiff is "a serial litigant relying on works created by a third party to seek compensation." (D.E. 160-1 at 7). However, Defendant has not established any evidence of who, if not Plaintiff, created the registered images. Defendant merely refers to a Declaration filed by its attorney who viewed a website of a third party company hosting a website that purportedly displayed images on its website which were substantially similar or identical to Plaintiff's images. Defendant's allegations are simply conclusory because Defendant never obtained any personal knowledge that the third party created the images or any personal knowledge regarding whether the third party actually holds any rights to a single copyright registration. Incredibly, Defendant does not recognize that this website may be infringing on Plaintiff's registered images.[1]

---

[1] The undersigned has visited the third party website and it appears that this company does not ship to the United States or the Northern District of Illinois. See the Declaration of L. Pittaway, attached hereto as Exhibit One. As a result, Plaintiff does not anticipate pursuing any claims against the third party.

Third, Defendant states that it has sold "only $4,452 in profit" as if this is a conclusive fact. (D.E. 160-1 at 2); *see also* (D.E. 160-1 at 7)("roughly $4,452 in net proceed"). However, Amazon reported that Defendant sold 1,018 units of the product for a total of $11,410.19. (See Declaration of L. Pittaway, attached hereto as Exhibit One). This is nearly three times Defendant's reported value. Ultimately, Defendant is trying to minimize its profit and its sales. Even if Defendant agrees with Amazon's figures, Defendant appears to allege that $6,958.19 of $11,410.19, or the majority of its sales proceeds, went into operational costs. Defendant's bare assertions on this point, without any support in the form of personal knowledge, and in the context of Defendant's unprofessional and inflammatory allegations, should fail to generate any credibility or sympathy. To boot, Defendant completely contradicts itself by stating that Plaintiff had no injury, yet the platform reported that Defendant sold over one thousand units, not a small sum, of accused products. (D.E. 160-1 at 2)("Plaintiff suffered no measurable harm from Elana's alleged infringement."); *but see* Exhibit One.

Defendant's inflammatory characterizations and name calling are another example of Defendant's conclusory statements. First, Defendant characterizes Plaintiff as "a serial litigant who has filed over 25 IP infringement lawsuits," however there is no legal significance *even if* Plaintiff may have filed over 25 IP infringement lawsuits where none of the lawsuits were found to lack legal merit. This raises the question of why, other than simply making a potentially inflammatory characterization, Defendant would plead with these statements but for trying to detract from the lack of factual and legal merit in its allegations.

Second, Defendant alleges that "Plaintiff is a Chinese corporation with a registered business address in a residential unit in Yiwu, China," however there is no legal significance where Plaintiff has held itself out as a Chinese corporation with a registered business address in

Yiwu, China. Also, Defendant attempts to smear Plaintiff by alleging that Plaintiff maintains a "residential unit" in Yiwu, however Plaintiff disputes this purported information which in any event is merely based on an unnamed "local land investigator" and an unverified website screenshot. (D.E. 159-1 at ¶11). Even if Plaintiff did have a residential unit (which Plaintiff disputes), there is absolutely no *legal significance* in Defendant's potentially inflammatory language.

Third, Defendant unabashedly attacks the undersigned by stating that fraudulently obtained "registrations apparently were obtained with a clear litigation plan in mind, as all these registrations were certified by Plaintiff's attorney who also filed all these lawsuits." (D.E. 160-1 at 2). Notably, on May 7, 2025, this Court admonished Defendant's attorney against the use of "incivility and arguably inflammatory language." *Yiwu Baimei Electronic Commerce Co., Ltd., a Chinese Limited Corporation v. The Partnerships And Unincorporated Associations Identified On Schedule A*, Case No. 1:24CV08704 (N.D.Ill. —)(Jenkins, J.)("The Court takes note of the incivility and arguably inflammatory language that appears in Defendants' amended complaint. References to Plaintiff as opportunistic, a copyright troll, extortionate, or anything similar have no place in papers filed with the Court. This falls comfortably outside the bounds of acceptable advocacy. It will not be tolerated in future filings.)(D.E. 306). The repeated use of inflammatory language, especially after admonishment by the Court, clearly belies Defendant's inability to present any meritorious facts or law.

Fourth, Defendant attempts to bolster itself by stating "Elana is a small and unsophisticated e-commerce seller operated on Amazon who sourced Halloween-themed products from a seemingly credible third-party wholesaler." (D.E. 160-1 at 2). However, Defendant puts forward no details regarding its operation or why it is "unsophisticated" and why

its "third-party wholesaler" is credible other than its own self-serving assertion. Surprisingly, Defendant here ignores the fact that even if Plaintiff did not hold the registration, Defendant unapologetically admits to having infringed on the third party's registration. Defendant simply lacks any credibility to be making any of these conclusory statements and distasteful allegations.

In entirety, individually and cumulatively, Defendant's conclusory statements offers no legal merit to establish any of its claims or allegations. The fact that Defendant relies on inflammatory language and name calling belies the lack of facts or law to present.

## II. DEFENDANT FAILS TO PROVIDE ANY EVIDENCE WITH LEGAL MERIT

Substantively, Defendant's allegations fail to demonstrate any legal merit. Defendant fails to appreciate the fundamental significance of personal knowledge in its presentation of any purported fact before the Court. Generally, Defendant disputes Plaintiff's ownership of the Hollow Halloween Works because Defendant's attorney saw a website from a third party company which displayed at least one of the Hollow Halloween Works and a copyright symbol on its website. (D.E. 160-1 at 1-2, citing D.E. 159 – Exhibit 5). Based on these observations, Defendant deduces that the third party created the artwork and Plaintiff "fraudulently obtained" the copyright registration. (D.E. 160-1 at 5). Defendant even goes a step farther and accused the undersigned of assisting in filing cases with a fraudulently obtained registration. (D.E. 160-1 at 2). Defendant's attempt to further justify its unreasonable inferences by citing to Google's date's function with unverified searches does not save its argument. Indeed, an examination of the untranslated and unverified documents that Defendant relies upon demonstrates just how meritless its allegations are.

**A. DEFENDANT'S PURPORTED FACTS ARE OFFERED IN VIOLATION OF THE ATTORNEY-WITNESS RULE**

As explained by the American Bar Association, "[l]oyalty and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests." American Bar Association, "Rule 1.7 Conflict of Interest: Current Clients - Comment" available at https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_7_conflict_of_interest_current_clients/comment_on_rule_1_7/ (last visited June 6, 2025). As a result, the so-called "attorney-witness rule" developed to safeguard the appearance of impropriety which can develop when an attorney doubles as a witness in a case. Model Rule of Professional Conduct 1.7 (b) provides:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after disclosure.

*See* American Bar Association, "Rule 1.7: Conflict of Interest: Current Clients" available at https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_7_conflict_of_interest_current_clients/ (last visited June 6, 2025)*; see also Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLc*, Case No. 98-cv-7408, 1999 WL 409990 (N.D.Ill. June 7, 1999)(Gottschall, J.).

In the instant case, Defendant relies upon a Declaration of Zhongyi Huang, Esq., Defendant's attorney of record, to summarize the findings supporting the counterclaim. This Declaration presents a summary of an investigation from an unknown "local land investigator"

and screenshots reflecting the results of various Google searches. This Declaration does not only fail to provide any personal knowledge to support the purported facts, but the Declaration/Attorney Huang becomes the primary witness on behalf of Defendant. This role as witness and attorney, under these circumstances, violates the attorney-witness rule and the filing should not be considered by this Court.

**B. DEFENDANT RELIES UPON UNTRANSLATED DOCUMENTS**

Federal Rule of Civil Procedure 56(e) permits the use of affidavits in support of or opposition to a motion for summary judgment. In lieu of an affidavit, a party may submit an unsworn declaration made under penalty of perjury. 28 U.S.C. § 1746. However, witness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator. *See* Fed.R.Evid. 604 and 901. The failure to abide by these requirements may permit a district court to strike the declaration and/or not consider the purported testimony. *See Ulysse v. Waste Mgmt. of Fla*., No. 11-80723-CIV, 2013 WL 12177350, at *2 (S.D. Fla. Sept. 9, 2013) (affidavits not considered for purposes of summary judgment where they contained no information as to whether the translator was qualified and translated accurately); *Miranda v. Sweet Dixie Melon C*o., No. 7:06-CV-92, 2009 WL 1324847 (M.D. Ga. May 13, 2009) (affidavit not considered where translator was an employee of counsel of the proponent of the evidence, and there was no certification that the translation was accurate); *United States v. One 1988 Chevrolet Half-Ton Pickup Truck,* 357 F.Supp.2d 1321, 1329 (S.D.Ala. 2005) ("[I]t is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English.").

In the instant case, Defendant relies upon purported evidence presented in a declaration which amounts to untranslated language. In the Declaration of Zhongyi Huang, Esq., there are

several statements relying upon untranslated documents to support the foundation for Defendant's counterclaim. Specifically, Defendant alleges in its Counterclaim and supporting Declaration that Plaintiff's Works "are unauthorized reproduction of the designs of a Japanese company named Mixnuts Co., Ltd." and that a third party hosts a website which "contain[s] designs nearly identical to Plaintiff's/Counterclaim Defendant's Disputed work, with notice of Copyright 2000-2020 displayed on the Website." These allegations are supported by the following:

- "Attached as Exhibit 3 is a true and accurate copy of the company introduction page, automatically translated from Japanese to English by Google Chrome." (Doc. 159-1 at ¶5).
- "On the Website, all six listings at issue share the same title – "ブラックラウンド アクリルフックピアス" (Black Round Acrylic Pierce) – differentiated by an image description in parenthesis: (1) "ゾンビ" (Zombie"; (2) "魔法使い" (Wizard); (3) "毒蜘蛛"(Poisonous Spider); (4) "ジャックランタン" (Jack o Lantern): (5) "蜘蛛の巣" (Spider Web); and (6) "蜘蛛の巣" (black cat of graveyard)." (Doc. 159-1 at ¶6).
- Attached as Exhibit 5 is a true and accurate copy of the keyword search results in Japanese. (Doc. 159-1 at ¶7).
- Attached as Exhibit 6 is a true and accurate copy of the shop review of Green Piercing on Rakuten, automatically translated from Japanese to English by Google Chrome (D.E. 159-1 at ¶8).

The Defendant's references and purported facts in untranslated Japanese are not reliable and should not be considered by this Court. *See Delta Tech. Dev. LLC v. BIGJOYS*, No. 24 C 2406, 2024 WL 3755929, at *2 (N.D. Ill. Aug. 12, 2024) (Ellis, J.) It is a "well-established rule

that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation." *Heredia v. Americare, Inc*., No. 17 C 6219, 2020 WL 3961618, at *5 (S.D.N.Y. July 13, 2020). This includes "translations of a Chinese-language website" that use a "web browser's automatic translation service," particularly when there "is no indication that anyone with knowledge of the Chinese language reviewed the computer-generated translations" of the documents. *ABC Corp. v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 22 C 7079, 2022 WL 18937941, at *1 (N.D. Ill. Dec. 19, 2022).

Furthermore, Defendant's use of English-language translations using a web browser (Google Chrome), for automatic translation service, and as described in *ABC Corp.*, 2022 WL 18937941, at *1, is not an appropriate citation or translation and therefore inadmissible. Here, Defendant has failed to provide any verified affidavit as to the experience, knowledge, skill, or ability of the (artificial) translator and therefore these submissions are inadmissible. Because the Declaration as a whole relies upon this untranslated material, this Court should strike the Declaration and/or its supporting Exhibits as failing to conform in both form and substance.

### C. DEFENDANT HAS FAILED TO ESTABLISH THE PRECONDITIONS TO INVALIDITY

In the instant case, Defendant advances meritless arguments rather than substantively investigate its allegations. The Seventh Circuit recognized the potential for abuse as in this case when a defendant challenges registration when it modified the procedure for district courts to handle challenges of a copyright registration. As a matter of procedural review, the Seventh Circuit asks for district courts to substantively review the challenges so that infringers cannot "delay proceedings by simply alleging technical violations of the underlying copyright registrations." *Id.* It explains that "before seeking the Register's advice on materiality, the party seeking invalidation of the copyright must first establish the preconditions to invalidity—(1) that

the application contained a misstatement of fact and (2) that the misrepresentation was knowingly included on the application." *Energy Intelligence Group, Inc. v. CHS McPherson Refinery, Inc.*, 304 F.Supp.3d 1051, 1055-1056 (D. Kan. Jan. 17, 2018).

In its substantive review, courts have rejected the use of conclusory language to satisfy scienter and held that "[g]eneral conjecture, entirely devoid of factual support in the record, cannot overcome the presumption that plaintiff is the valid holder of the asserted copyrights on a motion for summary judgment in an infringement action." *LEGO A/S v. Best-Lock Construction Toys, Inc.*, 404 F.Supp.3d 583 (D.Conn. July 25, 2019). In other words, the Seventh Circuit did not want infringers to draw on nonsense evidence to clog up the courts with baseless challenges to copyright registration ownership. Yet that is exactly what Defendant here has done. Substantively, Defendant presents no admissible evidence and no verified facts. This is exactly the circumstances discussed by the Seventh Circuit for shutting down meritless challenges to a copyright registration.

In conclusion, Defendant offers nothing more than unverified and untranslated webpages, inferences and conclusory statements devoid of legal merit. (D.E. 159-1). There is no evidence that Defendant has spoken with anyone associated with the third party company, nor obtained the third party company's purported registration certificate. As a result, Defendant's attempt to attack Plaintiff's registration is improper and fails to establish that Plaintiff committed fraud in obtaining its copyright registration.

## IV. NO CIRCUMSTANCES HAVE CHANGED TO WARRANT RECONSIDERATION OF THE PRELIMINARY INJUNCTION

This Court has reviewed the evidence against Defendant and determined that a temporary restraining order and preliminary injunction were appropriate. Specifically, this Court found that

> [I]njunctive relief previously granted in the Temporary Restraining Order ("TRO") [Doc. 17] should remain in place through the pendency of this litigation and that issuing this Preliminary Injunction is warranted under Federal Rule of Civil Procedure 65. Evidence submitted in support of this Motion and in support of Plaintiff's previously granted Motion for Entry of a Temporary Restraining Order establishes that Plaintiff has demonstrated a likelihood of success on the merits; that no remedy at law exists; and that Plaintiff will suffer irreparable harm if the injunction is not granted.

(D.E. 152 at 2). Plaintiff respectfully submits that no circumstances have changed which should warrant this Court reconsidering its earlier findings. Defendants have raised absolutely no facts or law to warrant this Court's reconsideration of the preliminary injunction. This is particularly true where Defendant has misrepresented its sales history, presented meritless argument and engaged in inflammatory language. There is no basis for this Court to conclude that Defendant's account should not be restrained and trust that Defendant would not disengorge itself of any assets prior to any judgment. Therefore this Court's initial concerns regarding irreparable harm continue to exist.

## V. CONCLUSION

Defendant fails to provide a cognizable or meritorious challenge to the Preliminary Injunction. Defendant relies merely on inappropriate, unfounded, and conclusory statements. Substantively, Defendant presents nothing more than unreliable and unverified information. As a result, there have been no change in circumstances which should change this Court's position.

Respectfully submitted this 13th June, 2025.

*/s/ Lydia Pittaway*
Fla. Bar No: 0044790
Ford Banister LLC
305 Broadway - Floor 7
New York NY 10007
Telephone: +1 212-500-3268
Fax: +1 212-500-3269
lpittaway@fordbanister.com
*Attorney for Plaintiff*